Steven Dewayne **BURNETTE** and Randy Lynn Stewart, Appellants,

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 23, 1979.

William B. Bruce, Nashville, for appellant Burnette.

Phillip R. Robinson, Nashville, for appellant Stewart.

William M. Leech, Jr., Atty. Gen., Robert E. Kendrick, Deputy Atty. Gen., Victor S. Johnson, III, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

DAUGHTREY, Judge.

The appellants-defendants, Steven Dewayne Burnette and Randy Lynn Stewart, appeal from their conviction of robbery and their respective sentences of seven to ten and five to six years. They argue that the evidence is insufficient to support the jury's verdict because the proof fails to show that either defendant made a verbal demand for the money which the victim turned over to them. We find no error in the record, and we affirm the jury's verdict.

The proof was that the victim, an admitted homosexual, met the defendants at a so-called "gay bar" in downtown Nashville, where he was having a few beers before driving home to Kentucky late one night. The defendants asked for a ride home, saying that they lived within a mile or so of the tavern. The victim agreed to take them and was directed to a location near Shelby Park, where all three men left his automobile for the purpose of "taking a leak." The victim testified that as he finished urinating, he was suddenly hit in the head by Burnette, who was wielding a sledge hammer handle taken from the victim's automobile. The victim said that he tried to get away from the two men but was hit again and knocked to the ground. He testified that Stewart pulled a knife and put it to his throat, threatening to stab him at Burnette's direction. He further testified that in order to save his life he took out his billfold and said, "Here, just take my money and leave me alone." Stewart took the wallet from him. (Later he realized that his watch was also missing.) At this point a noise from a nearby house scared the two robbers, who fled the area on foot. The victim staggered from house to house seeking help and finally collapsed in the street as a police squad car arrived on the scene.

The first patrolmen to arrive found the victim covered with blood, with no detectible pulse or breathing; one of the officers attempted mouth-to-mouth resuscitation. Officers in a second patrol car searched the neighborhood for suspects and found Burnette, covered with blood and his clothing torn, a few blocks from the scene of the robbery. He admitted being with the victim earlier in the evening. Stewart was arrested the next day. His fingerprint was found on the victim's automobile.

Burnette did not testify nor offer any proof. Stewart took the stand in his own defense and testified that after the three men left the bar together, Burnette and the victim had discussed the possibility of having sexual relations, but that he, Stewart, was just "along for the ride." He said the difficulty started after all three had gotten out of the victim's car to urinate and the victim "grabbed for Burnette's privacy." In response, Stewart said, Burnette hit the victim with his fist once, and Stewart held the victim down while Burnette hit him twice more. Stewart said he then left the scene and ran to his home nearby. He

denied that any robbery was intended or accomplished or that any weapons were used; he said that he saw no blood on the victim at the time he left the area.

The victim was seriously injured, suffering multiple lacerations to his face and head and two fractures of the spine. He conceded on cross-examination that he could recall no explicit demand being made for his money, but also insisted that he feared for his life and understood from the circumstances that it was his valuables that the defendants were after at the time of the beating.

The law does not support the defendants' contention that in the absence of a specific demand, the proof in the record fails to make out a case of robbery. That offense is defined by statute as "the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear." T.C.A. § 39–3901. The evidence in this case is ample to satisfy the statute. As the law sensibly recognizes,

> [i]f the victim places his property in the hands of the robber through force or fear without raising a protesting voice or hand, such act is not of his own volition, but at the will of the robber. . . . It would be a distorted concept to say that a man might be pricked with hot irons or put in a state of terror by direct or indirect threats, gestures, and statements and conclude that he had not been robbed merely because he offered his personal property to gain surcease from pain or his release. If such were the law all robbers could resort to such conduct and wait for the victim to give without making a demand.

State v. Stephens, 66 Ariz. 219, 186 P.2d 346, 351–52 (1947). Accord, Flynn v. State, 562 P.2d 1135, 1136 (Nev.1977); State v. Jenkins, 8 N.C.App. 532, 174 S.E.2d 690, 691–92 (1970).

The jury was entitled to find from all the circumstances in the record that the "taking" in this case was not merely a "giving," but that it was done forcibly, by violence, and against the victim's will. The proof amply supports their verdict, and certainly

we are unable to say that "no rational trier of fact could reasonably find guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); see also Tennessee Rules of Appellate Procedure, Rule 13(e).

Affirmed.

BYERS and SCOTT, JJ., concur.